Good morning judges. Sorry, go ahead. Thank you. If counsel is ready, you may begin. Please state your appearance. Thank you, judges. May it please the court. My name is Kesh Kabani. I work at the Federal Public Defender's Office representing the petitioner of power, Mr. Fernando Almanza. Now I'd like to reserve two minutes of my time for rebuttal, but I'll watch the clock. Judges, this case is about how Mr. Almanza, an illiterate man with cognitive dysfunction, never received competent counsel at any stage of his state proceedings. At trial, a key witness had a clear motive to lie, and the prosecutor told the jury several times that the witness had nothing to gain from testifying. Mr. Almanza's trial attorney did nothing to elicit that motive or object to the prosecutor's inaccurate statement. On appeal, his counsel knew he was illiterate, but only sent him a misleading letter stating his case was over. The district court's order denying relief failed to recognize the significance of this abandonment and its timeliness determination was wrong. I'd like to start by discussing timeliness at issue one, more specifically in relation back. Now the district court's determination that the relevant claim in its amended petition, the ineffective assistance of trial counsel claim, IAC for short, does not relate back to the original petition is wrong. The district court found the original pro se petition to be about investigation and not about trial. But in that petition, in his pro se petition, Mr. Almanza contended that a Sixth Amendment right to counsel had been violated, partly because his trial counsel had not addressed Mr. Boggs' plea deal. That's a key witness, had not addressed his deal at trial, nor objected at trial. Moreover, the district court incorrectly interpreted his claim to be about his counsel's failure to obtain Mr. Boggs' plea agreement. But that is also wrong. Mr. Almanza's counsel had the plea agreement. He said so at trial. The detail in the pro se petition also indicates that Mr. Almanza had that plea agreement or at least knew its terms. Now in his amended petition, the IAC claim was based on his trial counsel's failure to meaningfully cross-examine Mr. Boggs' about his plea deal and counsel's failure to object to prosecutorial misconduct involving the same plea deal. In short, both petitions involve the same actor, his trial counsel, the same topic, that's Mr. Boggs' plea deal, and the same inaction occurring at the same time. That's his attorney's failure to address the deal at trial. Now even if the court finds ambiguity in Mr. Almanza's pro se petition, both the Supreme Court and this court have repeatedly stated that pro se petitions are to be construed liberally and with reference to the petitioner. And because the... Can I ask you a question? Yes, Judge. I wanted to know, maybe you can walk us through Mr. Almanza's attempts to seek assistance from paralegals in the AD CRR in his ability or inability to do so. Yes, Judge, in... Because I ask this because there doesn't seem to be anything in the record of these attempts or an affidavit from your client attesting to any kind of failed attempts, so I don't know if you can point to me in the record something I missed or... Well, Judge, the district court requested essentially an evidentiary hearing of two weeks and, you know, we presented these facts at the oral argument evidentiary hearing, and it wasn't really an evidentiary hearing because we had one week to prepare and it was the height of COVID, so we limited access to Mr. Almanza, but according to the oral argument, in which the appellee is not contesting the facts presented in that oral argument or in the briefing, but in December 2014, that was the first instance when Mr. Almanza had been released from isolated custody in which he was only with one other prisoner. He sought assistance from prison paralegals and they denied his request, saying that his appellate counsel would contact him and answer those questions. Now, Judge, in the record, the district court tried to determine when the prison paralegals had offered assistance to Mr. Almanza, and the first time that the district court assisted him was well into 2016, excuse me, early 2016, February 2016, so well after his federal petition was due. So that was the first, they conceded that that was the first time that they did assist him. Just what's your best argument or authorities that Mr. Almanza experienced extraordinary circumstances that would require equitable tolling? Sure, Judge. So, I believe it's important to understand the standard here that we agree that Mr. Almanza filed a timely pro se petition, but just because he filed a timely pro se petition, the claims as amended petition, just because he did not include the claims as amended petition in the timely petition doesn't mean that he's precluded from equitable tolling. In Suway v. Bider, in this court, in Ambon's decision, states that strict impossibility is not the standard for pro se petitioners. But just because he could have included those claims, the amended claims, claims as amended petition in his pro se petition, that does not preclude him from equitable tolling. Gibbs v. Legrand also states that, that strict impossibility is not the standard for pro se petitioners. Now, Judge, Mr. Almanza believed that he could exhaust the claims that were in his federal amended petition. In that petition, he believed that he could exhaust those claims in state court. And that is not an unreasonable belief. The state represented to the, excuse me, I believe represented to the district court, that he could avail himself of statutory tolling. They believed that his state PCR proceedings were pending. That's in docket 24. They stated that his proceedings were pending and that he could go back to the state court and exhaust those proceedings before returning to federal court. Now, Judge, it's also important here to note that Mr. Almanza filed a federal habeas petition, a pro se petition while his state proceedings were pending. Now, this court in Luden v. Miles, this court in Gibbs v. Legrand states that to expect a pro se petitioner to file a habeas petition while his PCR proceedings are ongoing raises diligence from reasonable diligence to maximum feasible diligence. And that's for a literate prisoner. Mr. Almanza was obviously illiterate, so the standard should be lower for him. So, I believe, Judge, that with the district court's reliance on the district court's orders providing Mr. Almanza with additional time to prepare his petition, that is another extraordinary circumstance warranting equitable tolling here. Are you referring, Counsel, to the June 2016 order? Correct. And did you waive argument regarding that order by not proceeding below on that? Proceed? You mean proceeding below, you mean in state court or? In the district court. I mean, the court provided Mr. Almanza with additional time and then Mr. Almanza used that time to attempt to exhaust his claims in state court. I just have one other question for you. You argued that Mr. Almanza's appellate counsel adequately, if Almanza's appellate counsel had adequately apprised him of the Arizona Court of Appeals affirming his conviction, he could have filed a timely PCR notice. I'm wondering how you describe his adequate notice? Well, Judge, his appellate counsel, after receiving the issuance of the mandate, she was still his counsel as of record in the Arizona Court of Appeals. Once she received the issuance of the mandate, she should afford that to him. In Maples v. Thomas, the Supreme Court never withdrew. The petitioner has never received notice from the court. So it's the same standard here. But a letter written in English called him to deliver that news? What would have been adequate notice? Yes, Judge, a call with the aid of an interpreter or going to the prison to meet with Mr. Almanza would have sufficed. If there are no additional questions, I'd like to reserve the balance of my time. Thank you. Thank you. Counsel, please state your appearance. Thank you, Werner. My name is Andrew Riley, and I'm appearing on behalf of response in this matter. The district court correctly held that the amended petition was untimely and that Almanza was not entitled to any equitable tolling, let alone equitable tolling that would be sufficient to make the very untimely amended petition otherwise timely. The question before the court is not whether a district or state PCR petition is entitled to some tolling. The question is whether the federal deadline was entitled to tolling. And as the record shows, Mr. Almanza did, in fact, file a timely federal habeas petition. His counsel added that his appeal had failed and that she was not going to pursue it any further. That letter was translated to him. To the point earlier, there had never been any complaint as far as I can find in the record of Almanza not being able to obtain translation services from other inmates. The first instance, I believe, is it might be the appointment of counsel at ER 30405, where he has said that his inmate helper is going to be transferred out. And so he is seeking appointment of counsel, but there's nothing to suggest that he hadn't received services. The Arizona Department of Corrections Policy provides services upon request. And shortly thereafter, there was a letter in the record, ER 291, the correspondence to the AG's office, where at best there's a line that says that the paralegal is not particularly cooperative, according to Almanza. But there's nothing that suggests that something was so severe that it prevented him from doing so, or from filing a timely petition. Because, again, he did, in fact, file a timely petition in this case. The four distinct groups that Almanza identifies as entitling him to equitable tolling are correctly rejected by the R&R and adopted by the district court's order. And frankly, the analysis and the stop clock kind of approach is just not the correct approach in this equitable tolling analysis. And it's important to note that for a number of years, Almanza wasn't pro se. He was, in fact, represented by habeas counsel. And any miscalculation at the time that took place here isn't sufficient to warrant equitable tolling in the circumstances. As far as the relation, back to touch on that quickly. In looking at Almanza's original petition, just looking at the plain language of his petition, Almanza believed that Mr. Boggs was a government agent or a government actor. And that was his complaint, that his why Boggs would infiltrate his materials and befriend him to gain a better plea deal. Whereas the claim in the amended petition is very different. It's a prosecutorial failure to object to a prosecutorial allegedly misconduct in vouching for Boggs and eliciting false testimony of some benefit that Boggs didn't believe he obtained. Because, again, he received his first plea was for a year and a half sentence and his second plea was for a year and a half sentence. So there's no difference to Boggs' mind that he didn't get any benefit and he testified as such. And regardless, again, that IAC claim is procedurally defaulted and it can't be excused by Martinez because ultimately Almanza was responsible for the procedural default, had nothing to do with habeas counsel and the PCR counsel's failure to raise the claim to the Arizona Court of Appeals because, again, nothing was properly before the court, before the state court. So no IAC claim could be adjudicated on the merits. Counsel, if you assume arguendo that we disagree with you on that last point on Martinez, what is your position on whether we are able to make the decision ourselves that the claim was substantial or should remand it to the district court? I think it's clear in the record that the claim is not substantial from the state's perspective. Again, at best, the only difference between the two plea agreements is whether or not he's charged with a, or he receives a felony conviction for a class 4 felony versus a class 6 felony. And as mentioned in the record, quite frankly, Boggs' criminal history where I think at that point he had 13 criminal convictions or something at that point. So the difference between a class 4 and a class 6 is diminuous or insignificant. And again, the important part of that isn't whether he received a concrete benefit that would seem large. It seems to me that the issue is whether he lied in front of the jury when he said he received nothing. And so whether he received something small or large doesn't really take away from the lie. And it seems to me that that is something that fundamentally changes potentially a jury's view of a witness when it can be shown to be lying, which he wasn't. And that issue is raised in his, it's not raised very elaborately or well, but it is raised in here on 315 in the original habeas petition. So does it matter in your view whether the benefit was small? Well, I don't think it matters. I mean, well, it matters in the sense that as a practical matter, as an objective matter, there's very little there. And as a subjective matter under Boggs, he, I mean, my reading of the testimony is not, is that in his mind that he emphasizes that I was a year and a half before and a year and a half after. And he had already served the sentence and there's no going, you know, there's no going back. In fact, the only way you could go back would be if he in fact testified falsely. I mean, if anything, it indicates that he would testify truthfully. Well, he said, he was, after he talked to Detective Snyder, did any of that change? And he said no. And so that answer was not true, regardless of the science of, because there was a change. After, after he talked to Snyder, the classification was changed. Now, the fact that he then says, well, it was minimal, that's, that's true. And that's true certainly in his, both objectively and subjectively. But it troubles me, I'll just say that. But it sounds to me like you don't have any objection to this court making that determination as to whether or not there's a substantial question. Well, no, I mean, I would object. I don't think it's a substantial question. I do think it's not a substantial claim. I mean, in the grand scheme of things, the failure to impeach on, the failure to point out to the jury that you said no error or that there was no difference between the plea agreement, well, this one says class four and this one says class six. Everything else is essentially the same, outside of also the, you know, the underlying conviction, too, was an aggravated assault versus a different thing. But I don't, again, pointing that out to the jury is rather insignificant in regards to the fact that, again, his sentence didn't change at all. You have all the corroborating evidence of the injuries to the victim, the testimony of the victim and everything in the grand scheme of things. So the idea that, I just don't see it's a substantial claim because of, you know, in context. Let me ask you a question. During the period that Mr. Alonzo sought assistance, how were the accommodations described in the ADCR's policy manual provided to inmates with significant impairments? I'm just trying to figure out how inmates were apprised of accommodations and, I guess, Mr. Alonzo in particular. I don't have, you know, I don't have any, we just have the ADC guidelines and I don't have anything from, I don't know what was specifically told to Alonzo or what wasn't told to Alonzo. And, again, it's not necessarily to what was affirmatively given to him. I mean, you have to ask for them. You can't not ask for them and then say they were never given to me. So these resources were available and he has to avail himself of that and he has to show, you know, there needs to be sufficient evidence and sufficient showing that, look, I tried to do it on this, you know, at this time and at this time and at this time and it kept being revoked and we just don't have that here. In fact, you know, after the motion for appointment of counsel, the respondents were instructed by the magistrate and the judge to do that for, essentially for Alonzo to contact the paralegal and to get, have her or the paralegal services get in touch with Alonzo and that happened right away. So, I mean, there's just no, there's nothing that I have come across or that I can recollect coming across in the record where Alonzo said he's affirmatively tried to do X on a certain day and it was denied him in that regard. And, again, it's his burden to do so, to avail himself of those things. And I think I've passed my time. I think what he asserts is that he learned that he could seek paralegal assistance from other inmates once he was released into the general population in December of 2015 and it's my understanding he's illiterate and he doesn't speak English. By this point, it doesn't seem timely. So I'm just trying to figure out if you agree that Mr. Alonzo's lack of notice about this assistance impeded his ability to file a PCR notice and petition. Again, I don't, the material, the availability of, as far as I'm aware, and I could be mistaken, but the availability to avail himself of those services in his initial custody situation was still available to him. But, again, even the, but to the underlying analysis, the equitable total goes to the federal, to the ability to file a federal claim. So it might give you a little bit in that regard, but, you know, it doesn't affect the ability, you know, the question for this court is not whether, is not that, you know, the state timeliness analysis for the state PCR proceeding, that's already been resolved and there's, you know, that can't be corrected now. And, I mean, now that he's aware and known that, you know, it's untimely, you have to proceed towards the next step, which would be the federal petition. Thank you. I don't think there's any other questions. Thank you. And we just ask that you affirm, or that you, that you affirm the district court's denial of your history. Thank you, Your Honor. Thank you. Mr. Giovanni, I don't think you have, I'll give you a minute for rebuttal. Thank you, Judge. Just two quick points. Again, Mr. Almanza, he received a letter from his appellate counsel. He tried to obtain paralegal assistance in December 2014. He never got that. And, you know, in the letter that the court pointed out, I believe the appellate has pointed out, he stated that paralegals were not cooperative with him. And that when he did seek paralegal assistance, the paralegal recommended or advised that he give up his federal habeas proceedings in which, but he did not abide by that. So the paralegals were not assisting him in any helpful way, really. So, Judge, the second point I'd make is about the substance of the claim, the substance of the trial IAC claim. Appellees seem to keep stating that Mr. Boggs had two plea agreements. It was one and a half years in the first, one and a half years in the second, and that there was no benefit. But the first plea was gone. The first plea was withdrawn. It was off the table. And so what matters here is if he did not cooperate with the state in his testimony, the one and a half years would have become almost 15 years due to his original charges being reinstated. So it's not the original plea that would have been reinstated, it's the original charges that would have been reinstated, which obviously much more than 1.5 years. If there are any additional questions, if there are no additional questions I would ask that you reverse the district court. Thank you very much. Thank you both. I appreciate your argument and presentations here today. The case of Fernando Almanza v. David Shin is now submitted.
judges: MURGUIA, GRABER, Fitzwater